SO ORDERED.

SIGNED this 05 day of November, 2012.

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

CHRISTINE JOSEPHINE ROSZKOWSKI,                    CASE NO. 12-06256-8-JRL
                                                   CHAPTER 7

     DEBTOR.

---

## ORDER

     This matter came before the court on the debtor's motions to avoid judicial lien on real and

personal property located at 1446 Cimarron Parkway, Unit 62, Wake Forest, North Carolina 27587

("condominium"),[1] to which Cimarron Homeowners Association, Inc. ("Cimarron") objected. Also

before the court was Cimarron's motion to require the trustee to abandon the personal property left

---

[1] The debtor has filed a myriad of motions seeking to avoid the judicial lien held by Cimarron. The first motion was filed on September 6, 2012, and sought to avoid the judicial lien on the condominium. The second motion was filed on September 19, 2012, and sought to avoid any non-possessory security interest held by Cimarron in any of her property, including the condominium. On October 26, 2012, the debtor amended her second motion to include a proposed order and certificates of service on counsel for Cimarron and the trustee. The debtor filed another motion on September 24, 2012, seeking to avoid the judicial lien on the condominium. The debtor's fourth and fifth motions to avoid were filed on October 15, 2012 and October 18, 2012, respectively. The debtor also instituted an adversary proceeding on October 29, 2012, to recover property against Cimarron, Gail Wikel, Talis Management Group, and all unknown persons claiming legal or equitable interest in the condominium.

1

by the debtor following her eviction from the condominium.  A hearing was held on October 30, 2012 in Raleigh, North Carolina.

## BACKGROUND

On August 21, 2006, Christine Josephine Roszkowski ("debtor") acquired title to the condominium by general warranty deed, which is recorded in Book 12124, Page 2580 of the Wake County Registry.  The deed specifically referenced a Declaration of Covenants, Conditions and Restrictions, which was separately recorded in Book 3636, Page 522 of the Wake County Registry ("declaration").  Cimarron was created pursuant to the declaration and the debtor acquired the condominium subject to the terms and conditions regarding assessments, late fees and interest contained therein.

In January 2011, the debtor defaulted in her obligation under the declaration to pay the $193.00 monthly homeowners association assessments owed to Cimarron.  On October 11, 2011, Cimarron filed a claim of lien for overdue and outstanding homeowners association assessments, late fees, interest and other charges in the amount of $3,465.96.  On November 14, 2011, Cimarron commenced foreclosure proceedings with the Wake County Clerk of Superior Court, Special Proceeding 11-SP-5456.  Following a hearing on December 14, 2011, at which the debtor appeared, an Assistant Wake County Clerk of Superior Court issued an order authorizing Cimarron to proceed with the foreclosure of the condominium to satisfy its lien ("foreclosure order").  On December 20, 2011, the debtor appealed the foreclosure order to the Wake County Superior Court pursuant to N.C. Gen. Stat. § 45-21.16(d1).  A hearing was held on April 9, 2012, where the Wake County Superior Court affirmed the foreclosure order authorizing Cimarron to proceed with the sale of the condominium.  The foreclosure sale was conducted on May 24, 2012, and Cimarron submitted a bid

of $9,958.69, which was the last and highest bid.

On June 5, 2012, Cimarron recorded a trustee's deed conveying the condominium to the highest bidder, Cimarron. Thereafter on June 28, 2012, an Assistant Wake County Clerk of Superior Court entered an order for possession, directing the Wake County Sheriff's Office to evict the debtor from the condominium. On July 5, 2012, the debtor was evicted from the condominium and Cimarron has had possession since that date. After refusing to leave the property at the direction of deputy sheriffs, the debtor was incarcerated in the Wake County Jail for twelve (12) days in June 2012. Following the debtor's eviction, her personal property remained on the premises. Although authorized to dispose or sell the personal property if not retrieved within ten (10) days under N.C. Gen. Stat.§§ 45-21.29(1) and § 45-25.9, Cimarron attempted to make arrangements for the debtor to remove the personal property from the condominium. These attempts proved futile as the debtor has refused to make any arrangements to the retrieve her personal property.

The debtor, electing to proceed pro se, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on August 31, 2012.[2] The trustee was appointed on September 9, 2012. According to her handwritten Schedule C, filed along with her bankruptcy petition, she claimed an exemption of $10,000.00 in the condominium and personal property (i.e., books, clothing, appliances, household goods, furnishings and antiques), which she valued at $86,000.00. On September 24, 2012, the debtor amended her Schedule C claiming, inter alia, a homestead and wild card exemption in the condominium totaling $40,000.00, an exemption for expected unemployment benefits pursuant to N.C. Gen. Stat. § 97-16 and a exemption of $5,500.00 in personal property, she

---

[2]On her voluntary petition, the debtor incorrectly indicated that the nature of her business was single asset real estate as defined in 11 U.S.C. § 101(51B).

valued at $44,000.00, pursuant to N.C. Gen. Stat. § 1C-1601(a)(4)(d) and N.C. Const. art. X, §1.

The debtor filed the motions currently before the court seeking to avoid the lien held by Cimarron, which is secured by the condominium, as an impairment of her exemptions under § 522(f).  On September 14, 2012, Cimarron objected and filed a separate motion for an order requiring the trustee to abandon the personal property left by the debtor at the condominium following her eviction.  The trustee filed his response objecting to Cimarron's motion on October 4, 2012.

## DISCUSSION

Section 522(f) of the Bankruptcy Code allows the debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) . . . ." if such lien is a judicial lien or a nonpossessory, nonpurchase-money security interest in specific items of personal property. 11 U.S.C. § 522(f)(1).  To avoid a lien, the property must be exempt and the lien must impair the exemption by "exceed[ing] the value that the debtor's interest in the property would have in the absence of any liens." § 522(f)(2)(A); see Clowney v. North Carolina. Nat'l Bank (In re Clowney), 19 B.R. 349, 352 (Bankr. M.D.N.C. 1982) (holding that the following three conditions must be met for § 522(f) to apply: "First, the debtor must have some property. Second, the debtor must be entitled to claim the property as exempt. Third, a lien must exist which impairs the entitled exemption."). Exemptions are determined on the petition date; therefore, a lien must exist on the petition date to impair an exemption. In re Hassell, No. 05-04606-8-JRL, at 1 (Bankr. E.D.N.C. Sept. 17, 2008) (citing In re Pettaway, No. 02-02619-8-JRL (Bankr. E.D.N.C. Mar. 10, 2004)).

Despite the debtor's continuous assertions to the contrary, as a matter of North Carolina law,

Cimarron's claim of lien was extinguished upon the transfer of the condominium following foreclosure and cannot impair her exemptions.  See, e.g., Clowney, 19 B.R. at 352 (Bankr. M.D.N.C. 1982) (holding that judicial liens may not be avoided under § 522(f) where none exist); Pettaway, No. 02-02619-8-JRL, at 1.  The debtor acquired the condominium subject to the terms and conditions regarding assessments, late fees and interest contained in the declaration.  Pursuant to N.C. Gen. Stat. § 47F-1-102, et seq.,[3]  Cimarron filed its claim of lien, which it received authorization to foreclose upon following a hearing and subsequent unsuccessful appeal by the debtor.  See, e.g., N.C. Gen. Stat. § 47F-3-116(a) (governing the collection of delinquent homeowners assessments providing that "[a]ny assessment levied against a lot remaining unpaid for a period of 30 days or longer shall constitute a lien on that lot when a claim of lien is filed of record in the office of the clerk of superior court of the county in which the lot is located."); id. § 47F-3-116(a1) (granting homeowners association lien claimants the authority to "foreclose the claim of lien in like manner as a mortgage on real estate under power of sale under Article 2A of Chapter 45 of the General Statutes."); In re Five Oaks Rec. Ass'n, 724 S.E.2d 98, 101 (N.C. Ct. App. 2012).  While the debtor claims that the lien impairs her exemptions, the debtor no longer owns the condominium. The prepetition conveyance of the condominium to Cimarron following the foreclosure sale satisfied its claim of lien, divesting the debtor of title to the condominium and extinguishing Cimarron's claim of lien.

Section 554(b) provides that "[o]n request of party in interest and after notice and hearing,

_____

[3]Chapter 47F of the North Carolina General Statutes, entitled The North Carolina Planned Community Act, governs the operation of homeowners associations in North Carolina. N.C. Gen. Stat. § 47F-1-102(a).  It generally applies to homeowners associations created on or before January 1, 1999; however, some provisions apply regardless of the date of creation.  See N.C. Gen. Stat. § 47F-1-102(c).

5

the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).  Despite being authorized to dispose or sell the debtor's personal property left at the condominium, Cimarron made repeated attempts to allow the debtor to remove the personal property from the condominium, but she has refused to remove the personal property.  According to the trustee, the debtor's petition, schedules, and exemptions are plagued with incompleteness and inaccuracies,[4] rendering him unable to assign an exact value of the personal property left at the condominium and precluded him from determining whether the property is burdensome or is of inconsequential value to the estate.  The trustee suggested, which was approved by the debtor, that the court appoint pro bono counsel to assist the debtor in amending Schedule C to cure the inaccuracies and maximize her exemptions. Based on the record, the court denies Cimarron's motion to abandon and directs the trustee, within ten (10) days to remove the debtor's personal property from the condominium.

## CONCLUSION

Based on the foregoing, debtor's motions to avoid the judicial lien of Cimarron are **DENIED** and Cimarron's motion for an order requiring the trustee to abandon property is **DENIED.** Accordingly, the trustee has ten (10) days to remove the debtor's personal property from the condominium.  In accordance with the trustee's suggestion and the debtor's approval, the court will appoint counsel to assist the debtor for the limited purpose of amending her Schedule C to realize

---

[4] A review of the debtor's petition and schedules is illustrative. In Schedule A, the debtor lists the condominium as having a value of $86,000.00, with a secured debt owed to Cimarron of $9,958.69.  In Schedule B, she assigned a value of $37,000.00 to the contents of the condominium, despite valuing the same contents at $44,000.00 in her amended Schedule C.  In both her original and amended Schedule C, the debtor left $3,500.00 of non-exempt equity in her vehicle, which she valued at $7,000.00, by only claiming a $3,500.00 exemption.

6

the full potential of her exemptions.

**END OF DOCUMENT**